TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Chief, National Security Division
MAXWELL COLL (Cal Bar No. 312651)
ALEXANDER S. GORIN (Cal. Bar No. 326235)
Assistant United States Attorneys
National Security Division
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1785/2429
    Facsimile: (213) 894-0141
    E-mail:   maxwell.coll@usdoj.gov
                 nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:24-00311-RGK-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT DAREN LI |
| v. | |
| DAREN LI,<br>   aka "Devon,"<br>   aka "KG-PERFECT,"<br>   aka "RF, | Hearing Date: January 5, 2026<br>Hearing Time: 10:00 a.m. |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California and Assistant United States Attorneys Maxwell Coll, Nisha Chandran, and Alexander Gorin, hereby files its

sentencing position for defendant DAREN LI.

This sentencing position is based upon the attached memorandum of points and authorities, the declaration of Assistant United States Attorney Maxwell Coll, the declaration of Special Agent George Jasek, the files and records in this case, the United States Probation and Pretrial Services Office's presentence investigation report, and such further evidence and argument as the Court may permit.

Dated: December 22, 2025       Respectfully submitted,

                               TODD BLANCHE
                               Deputy Attorney General

                               BILAL A. ESSAYLI
                               First Assistant United States
                               Attorney

                               IAN V. YANNIELLO
                               Assistant United States Attorney
                               Chief, National Security Division



                               _____
                               MAXWELL COLL
                               NISHA CHANDRAN
                               ALEXANDER S. GORIN
                               Assistant United States Attorney

                               STEFANIE SCHWARTZ
                               TAMARA LIVSHIZ
                               Trial Attorneys
                               Criminal Division, Computer Crime
                               and Intellectual Property Section

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case arises out of an international scheme to launder millions of dollars stolen from U.S. victims of cryptocurrency investment scams (also known as "pig butchering" scams). The government has publicly charged by indictment six defendants involved in the money-laundering network, five of whom have pleaded guilty and one of whom remains a fugitive.[1] The government has also charged by information three other individuals involved in the scheme, all of whom have also pleaded guilty.[2] Defendant DAREN LI is the seventh defendant to be sentenced of the nine individuals charged. Defendant DAREN LI is the first defendant to be sentenced who was directly involved in the ultimate receipt of victim funds in the Kingdom of Cambodia that had been converted to the cryptocurrency Tether.

On November 12, 2024, defendant pleaded guilty pursuant to a plea agreement to one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (Dkt. 51.) In the plea agreement, defendant agreed to a base offense level of 8; that defendant laundered funds between more than $3,500,000 and more than $65,000,000, such that a +18 to +24 specific offense characteristic must be applied; that defendant was convicted under Section 1956, such that a +2 enhancement must be applied; and that defendant engaged in sophisticated money laundering, such that another +2

---

[1] All of the indicted defendants are in cases before this Court. See United States v. Lu Zhang, Joseph Wong, Justin Walker, and Hailong Zhu, 2:23-00596-RGK-3; United States v. Daren Li and Yicheng Zhang, 2:24-393-RGK.

[2] See United States v. Shengsheng He, 2:25-CR-00175-RGK; United States v. Jose Somarriba, 2:25-CR-00181-RGK; and United States v. Jingliang Su, 2:25-CR-00362-RGK.

enhancement must be applied.  (Dkt. 51 at 9.)

The United States Probation and Presentence Office ("USPPO") issued its Presentence Report ("PSR") on January 23, 2025.  (Dkt. 59.)  The PSR calculated a total offense level of 36, which included a base offense level of 8 plus a 24-level increase because the loss attributable to defendant was greater than $65,000,000 (PSR ¶¶ 57–59); a two-level increase because defendant was convicted under Section 1956 (PSR ¶ 60); a two-level increase because defendant engaged in sophisticated laundering (PSR ¶¶ 61–62); a three-level increase for defendant's managerial and supervisory role (PSR ¶¶ 64–67); and a three-level reduction for defendant's acceptance of responsibility (PSR ¶¶ 71–72).  Based on a total offense level of 36, and a Criminal History Category of I, the PSR calculated an advisory Guideline range of 188 to 235 months' incarceration.[3]  (PSR ¶ 116.)

The government agrees with the PSR's criminal history calculation and the offense-level calculation.  However, the government believes that a further 10-level reduction is appropriate for the reasons stated in its contemporaneously filed motion.  In light of this, the total offense level calculation decreases to 26 and the resulting advisory Guidelines range is 63 to 78 months.  Thus, the government respectfully requests that the Court sentence defendant to: (1) a Guidelines term of 63 months' imprisonment; (2) three years of supervised release; (3) restitution in the amount of $28,372,884.44; and (4) a mandatory special assessment of $100.

---

[3] The PSR made a typographical error referring to the range as 188 to 135 months; the correct range is 188 to 235 months.  (PSR ¶ 116.)

2

## II. OVERVIEW OF STRUCTURE OF SCAM AND MONEY-LAUNDERING NETWORK

The conspiracy involved an international network of co-conspirators who scammed U.S. victims and laundered victim money through U.S. shell companies, international bank accounts, and cryptocurrency wallets.

**International Scammers**: First, unknown co-conspirators largely residing overseas (not defendant DAREN LI nor any of the charged co-conspirators in the related cases) contacted U.S. victims directly through unsolicited social-media interactions, telephone calls and messages, and online dating services. These co-conspirators gained the trust of victims by establishing either professional, friendly, or romantic relationships with them. After gaining the victims' trust, the co-conspirators promoted fraudulent cryptocurrency investments to the victims. Co-conspirators established spoofed domains and websites that often resembled legitimate cryptocurrency trading platforms. In some executions of the scheme, co-conspirators fraudulently induced victims into investing in cryptocurrency through these fraudulent and spoofed investment platforms. In other executions of the scheme, co-conspirators fraudulently induced victims into investing in cryptocurrency by sending funds via wire transfers to U.S.-based bank accounts. Co-conspirators fraudulently represented to victims that their investments were appreciating when, in fact, those funds were stolen.

**Domestic Laundering Networks**: Second, a group of domestic money launderers received victim funds in U.S.-based bank accounts established on behalf of U.S. shell companies and caused the further transfer of victim funds to domestic and international bank accounts.

Defendants in the related case, United States v. Lu Zhang, et al., 23-CR-596-RGK, fit within this category of co-conspirators. These defendants, among other co-conspirators, worked together to register shell companies with the California Secretary of State and/or open bank accounts in the names of those shell companies with U.S. financial institutions, including Bank of America ("BoA") and JPMorgan Chase ("JPMC"). The shell company accounts received bank wires from victims of the scheme throughout the United States. These individuals discussed when and how to receive and execute interstate and international wire transfers of victim funds, arranged for the transfer of the fraudulently obtained proceeds via interstate and international wire transfers, and caused wire transfers to be sent through various intermediary bank accounts before reaching their final beneficiary. These defendants and other money movers traveled to financial institutions within the Central District of California to access funds in the bank accounts used to launder fraud proceeds, called the banks to inquire about the status of the funds, and closely monitored the bank accounts, insuring victim funds continued to flow into and out of the accounts.

**Bahamian Cryptocurrency Converters**: Third, virtually all of the victim funds flowed from U.S. bank accounts to two bank accounts at the Bahamian financial institution Deltec Bank & Trust ("Deltec Bank"), referred to in related court documents as Bahamas Account #1 and Bahamas Account #2. Defendants Shengsheng He, Jose Somarriba, and Jingliang Su in the related cases have been charged with setting up the Bahamian entity Axis Digital Limited and the affiliated bank account Bahamas Account #1. Known and unknown co-conspirators set up

4

Bahamas Account #2.  Once these defendants received the victim funds from transfers the money movers initiated, the Bahamian cryptocurrency converters would cause the funds to be converted from U.S. dollars to the cryptocurrency Tether, or USDT.[4]  After the funds were converted to USDT, defendants He, Somarriba, and Su, and others, would cause Deltec Bank to transfer the USDT to a cryptocurrency wallet controlled by individuals overseas, including defendant LI.

**Final Distribution of Victim Funds**:    Fourth, after co-conspirators laundered the victim funds from U.S.-based bank accounts to the Bahamian bank accounts and converted the funds to USDT, a network of foreign-based individuals, including defendant DAREN LI, would receive the cryptocurrency in a virtual currency wallet.  After receiving the funds in the virtual currency wallet, these co-conspirators would distribute the USDT to foreign criminals running

---

[4] Tether, or "USDT," is a type of cryptocurrency known as a stablecoin pegged to the U.S. dollar.  Thus, one USDT always equals one U.S. dollar.

5

the scam centers overseas, including in the Kingdom of Cambodia.  The figure below shows the overall flow of funds in the charged scheme:



### III. DEFENDANT RECEIVED MORE THAN $73 MILLION IN LAUNDERED FUNDS

As stated in the plea agreement (Dkt. 51 at 7-9):

Beginning from at least August 2021, and continuing through at least April 12, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly conspired with co-defendant YICHENG ZHANG, and others, to conduct financial transactions involving property that represented the proceeds of wire fraud, in violation of Title 18, United States Code, Section 1343. Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

Defendant admits that he conspired with ZHANG and others to launder funds obtained from victims through cryptocurrency scams and related frauds, as described in count one of the indictment, and admits that the factual allegations described in count one are true

6

and accurate. Defendant knew that the property involved in the financial transactions represented, and would represent, the proceeds of some form of unlawful activity; that the transactions were, and would be, designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds; and the laundering scheme involved **at least $73.6 million** in fraudulently obtained funds.

In furtherance of the conspiracy, defendant communicated with his co-conspirators through encrypted messaging services. In order to conceal or disguise the nature, location, source, ownership, and control of the fraudulently obtained victim funds, defendant would instruct co-conspirators to open bank accounts established on behalf of shell companies and caused the further transfer of victim funds to domestic and international bank accounts. Defendant and other coconspirators would monitor the receipt and execution of interstate and international wire transfers of victim funds. Defendant and other co-conspirators would cause wire transfers to be sent through various domestic and international intermediary bank accounts before reaching their final beneficiary, and ultimately would receive victim funds in financial accounts they controlled.

Defendant would then monitor the conversion of victim funds to virtual currency, specifically Tether ("USDT"), and the subsequent distribution of that virtual currency to cryptocurrency wallets controlled by defendant and his co-conspirators. Defendant and his co-conspirators would provide virtual currency wallet addresses to Deltec Bank and others to receive the USDT. Defendant admits that at least $73.6 million in victim funds were directly deposited into bank

accounts associated with defendant and his co-conspirators, including at least $59.8 million from U.S. shell companies that laundered victim proceeds. Defendant further admits that more than $4.5 million in victim funds were directly deposited into bank accounts associated with shell entities in the names of B&C Commerce LLC, Jimei Trading, Inc., YXJ Trading Corporation, SMX Beauty, Inc., and SMX Travel, Inc.

**IV. THE USPPO'S CALCULATIONS**

    **A. The Government Concurs with the USPPO's Criminal History Calculations and the Guidelines Offense Level.**

The USPPO determined that defendant has zero criminal history points. (PSR ¶ 80.) Defendant thus falls within Criminal History Category I. (Id.) The government concurs with this calculation.

The PSR also calculated, based on the above facts, a total offense level of 36. (PSR ¶ 75.) The PSR's total offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) |
| Loss Amount More Than $65,000,000: | +24 | U.S.S.G. § 2B1.1(b)(1)(M) |
| Conviction Under 1956 | +2 | U.S.S.G. § 2S1.1(b)(2)(B) |
| Sophisticated Laundering | +2 | U.S.S.G. § 2S1.1(b)(3) |
| Aggravated Role | +3 | U.S.S.G. § 3B1.1(b) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) |
| TOTAL: | 36 | |

Based on that calculation, the USPPO recognized that a total offense level of 36 and a Criminal History Category of I yield an

8

advisory Guidelines range of 188 to 235 months' imprisonment.  (PSR ¶ 116.)

### B. The Government Concurs with the PSR's Calculations.

The loss amount in these cases is devastating.  Financial tracing shows that Bahamas Account #1 alone received more than $36 million in funds from U.S. shell companies funneling victim proceeds that were then converted to the cryptocurrency USDT and transferred to a virtual wallet controlled by co-conspirators overseas including in Cambodia.  Defendant DAREN LI also received funds from Bahamas Account #2, which moved more than $34,384,222.  Defendant DAREN LI had access to a cryptocurrency wallet ending in Daax6 that received and transferred approximately $341,333,221.  And as defendant agreed to in his plea agreement, the laundering scheme involved at least $73.6 million in fraudulently obtained funds.

As detailed in the Victim Impact Statements, dozens of U.S. citizens lost substantial sums of money in the scams--in some instances, their entire life savings.  Because the victim funds were wired overseas, converted to cryptocurrency and further dispersed to dozens of unhosted virtual wallets, the government was not able to freeze, seize, or recover any of the direct victim proceeds.[5]  Due to the money-laundering network, the victims' savings and supposed "investments" are gone and distributed to co-conspirators throughout Cambodia and elsewhere.

## V. THE GOVERNMENT REQUESTS A 10-LEVEL DEPARTURE.

The government has filed a contemporaneous document requesting a 10-level departure.

---

[5] The government continues to pursue alternative ways to recover funds for victims of these cases.

9

\* \* \*

Accordingly, the government believes the total offense level calculation for defendant is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 8 | U.S.S.G. §2S1.1(a)(2) |
| Loss Amount More Than $65,000,000: | +24 | U.S.S.G. § 2B1.1(b)(1)(M) |
| Conviction Under 1956 | +2 | U.S.S.G. § 2S1.1(b)(2)(B) |
| Sophisticated Laundering | +2 | U.S.S.G. § 2S1.1(b)(3) |
| Aggravated Role | +3 | U.S.S.G. § 3B1.1(b) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a)-(b) |
| Departure | -10 | Contemporaneous Filing |
| TOTAL: | 26 | |

Based on a Criminal History Category of I, the advisory Guidelines range is 63 to 78 months' imprisonment. The government's recommended sentence is at the low-end of this advisory Guidelines range: 63 months' incarceration.

**VI.   JOINT AND SEVERAL RESTITUTION OBLIGATION**

The government submits that defendant DAREN LI should be held jointly and severally liable with the below-listed convicted co-participants (which list includes the defendant) in the offense conduct for the amount of restitution ordered in this judgement:

- Lu Zhang (Case No. 23-CR-596-RGK-1)
- Joseph Wong (Case No. 23-CR-596-RGK-2)
- Justin Walker (Case No. 23-CR-596-RGK-3)
- Yicheng Zhang (Case No. 24-CR-311-RGK-2)
- Jose Somarriba (Case No. 25-CR-181-RGK)

- Jingliang Su (Case No. 25-CR-362-RGK)
- Shengsheng He (Case No. 25-CR-175-RGK)

The victims' recovery remains limited to the amount of their loss and the defendant's liability for restitution ceases if and when the victims receive full restitution as to the defendant, or when the victims are made whole, whichever is earlier.

The government attaches hereto as Exhibit 1 to the Declaration of Special Agent John Jasek an anonymized list of victims with their respective loss amounts. The total restitution owed is **$28,372,884.44.** The victims listed in this document are individuals who sent funds to U.S. shell companies that transferred funds to Bahamas Account #1 and Bahamas Account #2, and who self-reported their losses to the government. The amount listed is the amount the government can attribute to the shell company bank accounts based on the self-reporting documentation.

**VII. VICTIM IMPACT STATEMENTS**

The government has submitted contemporaneously with this filing a sealed document attaching victim impact statements.

**VIII.    THE GOVERNMENT RECOMMENDS 63 MONTHS' INCARCERATION**

The government recommends that the defendant be sentenced to a Guidelines term of 63 months' imprisonment, a three-year period of supervised release, a $100 special assessment, and restitution of $28,372,884.44. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

    **A.   Need to Afford Adequate Deterrence**

Economic crimes like the charged money laundering scheme are quintessentially deterrable. "Because economic and fraud-based

crimes are 'more rational, cool, and calculated than sudden crimes of passion or opportunity,' these crimes are 'prime candidate[s] for general deterrence.'" See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After *Booker*, 47 Wm. & Mary L. Rev. 721, 724 (2005)).  In fact, Congress, in drafting section 3553, confirmed that this common-sense principle was one of the driving forces for including deterrence among the goals of sentencing. See S. Rep. No. 98-255, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("To deter others from committing the offense . . . is particularly important in the area of white collar crime.").  Indeed, Congress was expressly concerned with the fact that "[m]ajor white collar criminals often are sentenced to . . . little or no imprisonment," which the offenders disregard as "a cost of doing business." Id. As Judge Bea has written, "bank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision." United States v. Edwards, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J., concurring).

    Conspiracies like the one involved in this case are the lifeline for international cryptocurrency investment frauds.  The funds transferred overseas and converted to cryptocurrency give criminal syndicates the means to traffic humans and run scam compounds. Defendant DAREN LI managed and supervised the receipt of millions in victim funds, and his co-conspirators converted virtually all of the proceeds to Tether for quick dissipation.  The Court should deter this conduct.

**B.     Seriousness of the Offense**

This is a case in which the sentencing guidelines appropriately identify the factors that make defendant's conduct so serious: the millions of dollars in loss to numerous victims throughout the United States and the business of laundering funds. Together, these factors speak to a sophisticated scheme that devastated the lives of many U.S. citizens. The effectiveness of the crime also prevented the government from freezing, seizing, or recovering any of the direct victim proceeds. The funds were dissipated across unhosted virtual wallets controlled by individuals overseas, primarily in Southeast Asia, including the Daxx6 address that defendant LI accessed.

**C.     Need to Avoid Unwarranted Disparities**

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants. One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."). The government's within-Guidelines recommended sentence avoids an unwarranted disparity with similarly situated defendants.

**IX.  CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence defendant to 63 months' imprisonment, three years'

13

supervised release, a $100 special assessment, and restitution of $28,372,884.44.

14

**DECLARATION OF GEORGE JASEK**

1. I am a Special Agent ("SA") with the United States Secret Service and have been so employed since March 2018. I am currently assigned to the Criminal Investigative Division in Washington, District of Columbia. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2. Attached hereto as **Exhibit 1** is a list of U.S. victims who sent funds to shell companies that transferred their funds to Bahamas Account #1 and Bahamas Account #2. The amount of the loss is based on a government analysis of self-reporting documentation and shell company records.

3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: December 22, 2025.

_____
GEORGE JASEK

15

**DECLARATION OF AUSA MAXWELL COLL**

I, Maxwell Coll, hereby declare and state:

1. I am an Assistant United States Attorney with the Cyber and Intellectual Property Crimes Section at the U.S. Attorney's Office for the Central District of California. I am one of the prosecutors assigned to this case.

2. This declaration is made in support of the government's sentencing position for defendant DAREN LI.

3. Attached hereto as **Exhibit 2** is a true and correct copy of a compilation of relevant victim impact statements provided to the United States Attorney's Office as of the date of this filing.

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: December 22, 2025.

                                        MAXWELL COLL